```
                UNITED STATES DISTRICT COURT

           FOR THE SOUTHERN DISTRICT OF CALIFORNIA

              BEFORE THE HONORABLE STEVE B. CHU

                 UNITED STATES MAGISTRATE JUDGE


_____
                                )
UNITED STATES OF AMERICA,       )
                                )   Case No. 23-mj-03854-MDD
                                )
                     Plaintiff, )
                                )   October 31, 2023
           v.                   )
                                )
SEAN STEVENSON,                 )   Detention Hearing
                                )
                     Defendant. )
_____)
```

**CERTIFIED TRANSCRIPT**

REPORTER'S TRANSCRIPT OF
ELECTRONICALLY RECORDED PROCEEDINGS

PAGES 1 THROUGH 18

APPEARANCES:

For Plaintiff:   UNITED STATES ATTORNEY'S OFFICE
                 880 Front Street, Suite 6293
                 San Diego, California  92101-8807
                 BY:  ANDREW SHERWOOD, AUSA

For Defendant:   FEDERAL DEFENDERS OF SAN DIEGO
                 225 Broadway, Suite 900
                 San Diego, California  92101-5030
                 BY:  DANA GRIMES, ESQ.


Reported by:  Stephanie Whitehead, RDR, CRR, CSR #10093
United States District Court, Southern District
333 West Broadway, Suite 420
San Diego, California  92101-3806

```
1                    TUESDAY, OCTOBER 31, 2023
2                              -o0o-
3           THE CLERK:  Calling matter 2, Case 23-MJ-3854,
4    USA v. Sean Stevenson.
5           MS. GRIMES:  Good afternoon, your Honor.  Dana
6    Grimes, retained, making a general appearance on
7    Mr. Stevenson's behalf.  I'm here with my colleague,
8    esteemed colleague, Zeke Cortez, who I believe will be
9    seeking to be relieved today having been provisionally
10   appointed for the purpose of helping Mr. Stevenson find
11   retained counsel.
12          MR. CORTEZ:  That is correct.
13          THE COURT:  All right.  Thank you.
14          Thank you for your service, Mr. Cortez.  We
15   will confirm then that Ms. Grimes will now be counsel
16   going forward.  So you are relieved of your obligations,
17   sir, but thank you.
18          MR. CORTEZ:  May I be excused?
19          THE COURT:  Yes.  Thank you.
20          MR. SHERWOOD:  Andrew Sherwood for the United
21   States.  Good afternoon, your Honor.
22          THE COURT:  Good afternoon, Mr. Sherwood.  We
23   are proceeding with the detention hearing, today?
24          MS. GRIMES:  Yes, your Honor.
25          THE COURT:  Okay.
```

1     MS. GRIMES:  Mr. Stevenson is now present in
2  custody, your Honor.
3     THE COURT:  Thank you, Ms. Grimes.  Do you need
4  a moment with your client?
5     MS. GRIMES:  No, your Honor.
6     THE COURT:  Okay.  All right.  What is the
7  Government's position then?
8     MR. SHERWOOD:  Your Honor, the United States is
9  moving to detain the defendant for serious risk of
10 flight and danger to the community.
11    THE COURT:  All right.
12    MR. SHERWOOD:  And we're ready to proceed.
13    THE COURT:  Defense is ready to proceed?
14    MS. GRIMES:  Yes, your Honor.
15    THE COURT:  All right.  I'll hear from the
16 Government first.
17    MR. SHERWOOD:  Yes, your Honor.  Your Honor,
18 this is a presumption case where the defendant sought
19 out and tried to pay for sex with a 16 year old, and
20 he's prolific in his attempts to buy kids for sex.  His
21 Pinger account had numerous conversations with other
22 commercial sex workers where the defendant's trying to
23 arrange sex with minors.  And he did all of this while
24 working as a high school science teacher and as a high
25 school running coach.

1              Your Honor, the defendant's a predator, and he
2    should be detained for serious risk of flight and danger
3    to the community.  The evidence in this case is
4    overwhelming.  All of the messages, as they relate to
5    this current charge, are recorded and in possession of
6    law enforcement, and they are messages to an undercover
7    posing as a 16 year old.
8              Just to give you a flavor of some of the chats
9    that the defendant was engaged in, the undercover, when
10   offering up this purported 16 year old, says that her
11   cousin is only 16 and the defendant's response was "Oh,
12   shit.  Yes."  The defendant then specifically inquired
13   later if the undercover had a younger girl.  When told
14   again that she was 16, the defendant said, "Okay.  I'm
15   very interested."  And there's also another chat where
16   the defendant's asking if this 16 year old would be
17   willing to have a threesome with the defendant and one
18   of his friends.
19             And then we have the messages where the
20   defendant negotiates a price of $140 for oral sex with
21   the 16 year old.  A meet-up location is given, and the
22   defendant arrives at that meet-up location, and he's
23   arrested when he gets there, and officers find on him or
24   in his vehicle, the $140 that he negotiated.  And then
25   they also, most importantly, call his phone.  And they

call his phone from the number that he was communicating with from the undercover, and then the defendant's phone rings.

And it -- but his -- perhaps most troubling, or more troubling, is his criminal conduct doesn't stop with the exchange of this undercover. As I said, when we searched his Pinger account, there's numerous conversations with other commercial sex workers where the defendant is trying to arrange sex with minors. And when they searched his phone, law enforcement also found pictures and images of minors engaged in sexually explicit conduct. And it also doesn't stop there. When they searched his home, they found hidden in his home thumb drives that were in a spare bedroom, underneath a basket, in a sunglass case. And those had more images and videos of minors engaged in sexually explicit conduct. So child sex abuse material, your Honor.

It's an incredibly serious, disturbing case, and the evidence is overwhelming. The charge before your Honor is a 10-year mandatory minimum, and his guidelines as preliminarily calculated are 121 to 151 months in prison. And he's facing even more time and more charges based on what was found in the Pinger account, based what's on his phone, and based what was found on the thumb drives.

1	     Now, the United States recognizes he has ties
2	here.  He lives here.  He has a job here.  But it's our
3	understanding that the -- his partner that he was living
4	with no longer wants anything to do with him.  The
5	defense can correct me if that's incorrect, but that is
6	our understanding.  And he's not welcome back in the
7	home.  He's also clearly not welcome back at the school
8	where he taught teenagers, and his job is very likely to
9	be lost.  So his ties, such as work and living here, are
10	kind of gone and not a reason for him to stay here
11	anymore.
12	     It's also important to note that he's a
13	frequent international traveler.  In 2019, he traveled
14	to London and Paris; in 2021 he traveled to Mexico
15	twice; in 2022 he traveled to Italy; and he traveled to
16	Belgium this year.  This shows he has the ability, the
17	means to travel internationally.  He shows his ability
18	to flee, and he has the resources to do so.
19	     His exposure in this case is tremendous, your
20	Honor.  He's facing a lot of prison time, and the
21	evidence is overwhelming.  There's really no reason for
22	him to come back to court.  He has every incentive to
23	flee and, as such, he should be detained for serious
24	risk of night.
25	     As to danger to the community, it's clear:

1    He's a high school teacher, and he repeatedly and
2    consistently sought out minors to have sex with.  He is
3    a person who appeared to have no reservations whatsoever
4    about paying for kids, teenagers that were being
5    trafficked and exploited.  And every layer of this
6    investigation has discovered more disturbing
7    information, more evidence, and more crimes the
8    defendant has committed.
9            First it starts with this chat with this
10   undercover officer where he's trying to buy a
11   16-year-old.  And based off of that, we got a search
12   warrant for his Pinger account where he's contacting
13   other commercial sex workers trying to purchase minors.
14   Then we get the search warrant for his cell phone, and
15   on his cell phone is child sex abuse material.  And then
16   we get a search warrant for his house, and in his home
17   are thumb drives with child sexual abuse material on
18   them.
19           The more we've investigated this, the more
20   crimes and child exploitation offenses that he's
21   committed that we've discovered.  And that's important
22   because it shows -- it shows that the charge in front of
23   your Honor is not some one-off event; it shows he's a
24   true danger to the community in how much he's engaged in
25   this sort of activity.

1          And it's also important to recognize, your
2    Honor, that he had unlimited access to the very
3    demographic of the kids he was trying to purchase.  He
4    was a high school teacher which means he's around
5    teenagers all day long, and then he extended that by
6    being their running coach.  Basically his entire
7    professional life revolved around being around minors,
8    being around teenagers.  And we've also learned through
9    the course of this investigation -- and this is
10   unconfirmed -- but that there were concerns of the
11   defendant trying to buy minors for sex as far back as
12   2004, that a commercial sex worker reached out to the
13   defendant's ex-wife and said that the defendant was
14   asking for sex from young girls.
15          So no amount of money or bond can make up for a
16   child that's bought and sold, and that's exactly what
17   the defendant was trying to do.  And if he's released in
18   into the community that's the risk we're taking, and
19   it's not a risk worth taking.  He's a true danger to the
20   community.  He's a danger to the minors of this
21   community, and we'd urge your Honor to detain the
22   defendant.  Thank you.
23               THE COURT:  Submitted?
24               MR. SHERWOOD:  Yes.
25               THE COURT:  All right.  Ms. Grimes.

1           MS. GRIMES:  Thank you, your Honor.  I'm
2    proposing a $500,000 real property bond in this case
3    secured by one financially related -- financially
4    responsible and related adult, Eileen Stevenson, the
5    mother of Mr. Stevenson.  She's present in court today,
6    your Honor.  She is seated in the audience in the second
7    row and is indicating with her hand.  She's prepared to
8    answer any questions that your Honor may have of her or
9    any questions directed to her by the Government in terms
10   of her understanding of the nature of the charges and
11   her role as a would-be surety in this case.
12          Ms. Stevenson is uniquely situated to be a
13   surety in this matter.  She owns a home in Jamul on
14   4 acres.  It's an isolated property.  It's worth
15   approximately $1 million, and it's unencumbered.  She's
16   a widower.  There are no children on the property.
17   She's sometimes visited by her adult daughter who's also
18   present in court today.
19          There is an ADU on the property that she rents
20   out, and has for a long time, to an older gentleman
21   who's 82 years old and a day-laborer.  She has no
22   interaction with them and they have no children on the
23   property.  The property in Jamul, besides being
24   geographically isolated, does not have WiFi.  It would
25   be easier than, in the typical case, to meet the Adam

1    Walsh conditions at this property that Ms. Stevenson
2    owns in Jamul.  And so it would not require that
3    Mr. Stevenson, if he's released on bond, live at his
4    home with his prior girlfriend with whom he was in a
5    monogamous relationship for 10 years in Talmadge.  And
6    we would propose that Mr. Stevenson live with his mom in
7    addition to using her home as collateral for the bond in
8    this case.
9              The Adam Walsh Act sets forth criteria for this
10   Court to consider in determining conditions reasonably
11   necessary to assure the appearance of Mr. Stevenson and
12   protect the safety of the community.  There's nothing
13   about the Government's presentation that changes those
14   criteria, in my view, including the sort of vague and
15   general references to uncharged conduct.
16             I would object and I would ask the Court not to
17   consider the unconfirmed PSA allegations that
18   Mr. Sherwood referred to with regard to potentially some
19   28 year old that he described as unconfirmed allegation
20   that the sexual conduct alleged in this case might date
21   back 20 years.  Without anything further, and the
22   Government's representation that it's unconfirmed, I
23   would ask the Court not to consider that but, rather, to
24   consider the confirmed information provided by the
25   Government as well as the charges.

1      I would note that if we looked at the spectrum
2 of the different types of conduct which are contemplated
3 by the statute, that the attempted enticement of a
4 post-pubescent 16-year-old law enforcement officer is
5 among the more mitigated ways of committing the offense
6 charged.  And, clearly, Title 18 USC 3142(c)(1)(B)
7 contemplates the setting of bond conditions when it's
8 possible and in the circumstance where the Court is able
9 to protect the community from doing so in this type of
10 sex case, as well as more egregious sex cases involving
11 actual contact between a defendant and a victim, and as
12 well as an actual victim in terms of not a law
13 enforcement officer.
14      The conditions that are contemplated by the
15 Adam Walsh Act, which I've gone over with Mr. Stevenson
16 in custody, and which he's indicated he's willing to
17 abide by, would include electronic monitoring,
18 restrictions on his -- his personal associations,
19 stay-away orders.  He's willing to abide by electronic
20 conditions including home detention.  As I alluded to
21 earlier, without WiFi at the home and with the landline
22 the conditions that this Court might include -- impose
23 including having a cell phone without Internet
24 capability are much more readily accomplished at a
25 four-acre parcel in Jamul than they would typically be.

```
 1            And so I would think the Court, upon examining
 2   those 3142(c)(1)(B) factors, will find that we can meet
 3   them in this case.
 4            I would note that the Adam Walsh Act does not
 5   require or mandate sex offender treatment, but I've
 6   spoken with the doctor who's widely acknowledged in the
 7   Southern District to be the preeminent sex offender
 8   doctor, and I'm sure the Court is familiar with
 9   Dr. James Reavis, and who's willing to accept
10   Mr. Stevenson as a patient while he's out on bond.  And
11   as this Court may be aware, when conditions are set,
12   including Adam Walsh conditions on sex cases, he's often
13   the treatment provider in those instances.
14            I've gone over this information with
15   Mr. Stevenson who's willing to comply with any
16   treatment -- any treatment conditions this Court should
17   impose.  And Dr. James Reavis, as I indicated, is
18   willing to accept Mr. Stevenson into his care.
19   Mr. Stevenson has never received any individual
20   counseling, much less sex-offender specific counseling.
21   He's also never received any meaningful alcohol
22   treatment.
23            With regard to the allegation that he might be
24   a flight risk, I would note that there's no information
25   in the Pretrial Services report regarding any failures
```

1    to appear on the two misdemeanor alcohol-related
2    convictions that Mr. Stevenson suffered when he was, I
3    believe 21 and 28 years old.
4              I don't see any information that he would flee
5    before this Court, especially considering that it would
6    jeopardize his mother's continued ability to live in her
7    home which is her primary asset.  She's not a rich
8    woman, although she owns this unencumbered property.
9    She has Social Security income, income from her tenants,
10   and some investments within the sort of million dollars
11   or less range.  And so for him to jeopardize his
12   mother's home, I don't think there's any information
13   before the Court to suggest he would do that.
14             He also will clearly be not able to proceed
15   with working as a teacher.  He was three years from
16   retirement.  With regard to teaching, I did not hear any
17   allegation that any students have come forward and
18   indicated that there has been any inappropriate contact
19   or touching with regard to his profession as a teacher.
20   And so I would ask the Court not to use the circumstance
21   of his being a credentialed teacher three years from
22   retirement against him when it -- when it comes to a
23   case involving apparently entirely allegations of -- of
24   the use of prostitutes, including, unfortunately, the
25   use of under-age prostitutes which is what brings it

1   within the provisions of, of course, the federal
2   government.
3           So this is a 58-year-old man who has the
4   support of many community members.  There are a number
5   of other community members who have reached out to me,
6   including a few friends of his in the front row today.
7   The fact that he has traveled internationally and the
8   idea that that might lead to his risk of flight can be
9   easily cured by his surrendering of a passport to
10  Pretrial Services which he is happy to do.  That would
11  prevent him from going to any of the places which were
12  named by the Government in their presentation.
13          I also note, finally, that 18 USC 3142
14  contemplates the setting of bond in cases -- in addition
15  to this particular type of charge, cases involving
16  completed sex acts with minors and sex trafficking,
17  where we do not have the type of mitigants that we do in
18  this case with regard to family ties, length of time in
19  the community.  I'm not sure that I mentioned that
20  Mr. Stevenson has been here since he was four years old.
21  He's a graduate of a local high school.  He then went to
22  college at San Diego State.  After graduating and
23  achieving his diploma, he then went on to achieve a
24  master's also at San Diego State.  And so he's a very
25  longtime resident of San Diego with no indication that

1    he has ties anywhere else in the world at all.
2             And so because of his very strong community
3    ties, community support, his willingness to complete
4    treatment, his ability to abide by all of the electronic
5    conditions, including Fourth Amendment waivers and
6    electronic Fourth waivers that this Court should impose,
7    he is uniquely situated to be able to abide by the Adam
8    Walsh conditions, and a bond should be set in this case.
9    Submitted.
10            THE COURT:  All right.  Thank you, Ms. Grimes.
11            Mr. Sherwood, do you wish to respond to
12   anything?
13            MR. SHERWOOD:  Just super briefly, your Honor.
14   I would note that it's -- I understand that was an
15   undercover, and maybe that's somewhat mitigating,
16   although I'd argue that it's not.  But he was
17   communicating with legitimate commercial sex workers
18   trying to find other underage kids.  And the child
19   pornography that was on his devices appear to be younger
20   than teenagers.  And often in these cases we'll have
21   someone that's possessing child sex abuse material and
22   we don't have any evidence that they're, like, acting on
23   that interest or that desire.  But this case is full of
24   him trying to act on that interest and desire that he
25   has for kids.  So with that, we'd submit, your Honor.

1     THE COURT: All right. Ms. Grimes, you said
2  that the defendant's mother, Ms. Stevenson, as well as
3  some family friends are here today?
4     MS. GRIMES: Yes, your Honor, that's correct.
5  Ms. Stevenson and her daughter are seated in the second
6  row, and there are at least two family friends before
7  the Court today. And Ms. Stevenson is prepared to
8  answer any questions with regard to being a surety, your
9  Honor.
10    THE COURT: All right. Could you all please
11 stand for a moment, please.
12    All right. Thank you very much for being here
13 today. Your presence does mean a lot to the Court.
14    Ms. Grimes, I appreciate the proposals you have
15 made, and I am mindful of many of the factors you have
16 pointed out. I am concerned by the nature of the
17 charges and the evidence before us. I'm also mindful
18 that this is a presumption case with a mandatory 10
19 years and, likely, considerably more.
20    I am further mindful that this gentleman does
21 have some ties to the community, as you have pointed
22 out, although perhaps those ties have somewhat
23 diminished in the last -- in recent days or weeks. But
24 there are still ties to the community. My primary
25 concern, however, is the seriousness of the charge, the

1    nature of the charges, the evidence, albeit the --

2    albeit one of the lessor factors, the evidence does

3    appear to be quite strong.  I appreciate you making

4    arrangements for counseling and for a relatively high

5    real estate bond, should that be -- should that be an

6    option here.

7             However, based upon the foregoing, because of

8    my concerns as I've described, I find that the

9    Government has met its burden to demonstrate that the

10   defendant is a serious risk of flight and danger to the

11   community, and I will order his detention based upon

12   that.  So that will be it with regard to detention.  The

13   order will be without prejudice, of course.

14            Ms. Grimes, do you also wish to move the

15   preliminary hearing date to the arraignment date?

16            MS. GRIMES:  Yes, please, your Honor, for the

17   purpose of reviewing discovery and contemplating an

18   offer with my client.

19            THE COURT:  Okay.  So the preliminary hearing

20   date will be rescheduled now to November 21, 2023, which

21   will coincide with the arraignment in front of

22   Judge Skomal.

23            Mr. Sherwood, can you prepare the order on

24   this, please.

25            MR. SHERWOOD:  Yes, your Honor.

```
1            THE COURT:  Is there anything further from the
2   Government?
3            MR. SHERWOOD:  No, your Honor.
4            THE COURT:  Ms. Grimes?
5            MS. GRIMES:  Nothing further, your Honor.
6   Thank you.
7            THE COURT:  All right.  Thank you.  That will
8   be all then.
9            (End of recorded proceedings.)
10
11                 CERTIFICATE OF TRANSCRIBER
12           I certify the foregoing is a true and
13  correct transcript, to the best of my ability, of the
14  official electronic sound recording provided to me in
15  the above-entitled action on the date and time
16  previously stated.  I further certify that I am
17  neither counsel for, related to, nor employed by any
18  of the parties to the action in which this hearing was
19  taken, and further, that I am not financially nor
20  otherwise interested in the outcome of the action.
21
22  Dated:  November 3, 2023.
23
      S/ STEPHANIE WHITEHEAD
24
    Stephanie Whitehead, CSR 10093
25  U.S. Official Court Reporter
```